## SANDERS vs. ALDRICH.

A. contracted to sell a lot of land to F. for $1000. After $200, and the interest, had been paid, upon this contract, A. sold the same to T. and S. and transferred it, by a written assignment. Subsequently, payments were made, upon the contract, to the amount of about $400. F. became insolvent, and left the country, after having assigned *his* interest in the contract, to U. S. This assignment being shown to A. the latter thereupon conveyed the lot to U. S. by deed, with covenants of warranty. The interest of T. having been assigned to S. an action was brought by S. against A. to recover damages sustained by reason of the conveyance of the land to U. S. leaving a balance due to S. upon the contract; *Held* that A. was under no legal obligation to S. not to convey the land until the payments upon the contract. had all been made; and that in making the conveyance to the assignee of F., the defendant had violated no obligation or agreement with the plaintiff which could serve as the foundation of an action at law.

*Held also,* that *in equity* the plaintiff had a lien upon the land, for the purchase money which he had advanced to the defendant; and that U. S. took the title subject to that lien; that the plaintiff's remedy was against F. or his assignee, or the *land* in the hands of the latter; and that before equity could aid him, by granting relief as against the defendant, he must allege and prove that he was unable to obtain satisfaction from the land in the hands of U. S. by reason of some superior lien or claim against it, after it came to him, or that the defendant fraudulently conveyed to U. S., with intent to defeat and destroy the plaintiff's remedy, and thus rendered his lien of no avail.

ON the 2d of June, 1851, Solomon Aldrich, the defendant, contracted to sell to one George E. Flynt a lot of ground in the village of Binghamton, for $1000, payable in sash and blinds, out of Marsh & Flynt's shop, as called for; one half the said sash and blinds were to be paid for in cash on delivery, and the other half were to be applied in payment on the contract. After the payment of $200 and interest on the contract, Aldrich, on the 12th of May, 1853, sold the contract to Taylor & Sanders, (this plaintiff and his then partner,) for $800, and duly transferred it to them, by a common assignment. At the time of the sale, Aldrich represented to Taylor & Sanders that the contract was as good as a mortgage investment, &c. After it was assigned to Taylor & Sanders, payments to the amount of about $400 were made on it, from time to time, by Marsh & St. John, Flynt's successors in the sash and blind factory, leaving about $367 due. Flynt became insolvent and left the

country; and his successors in the business refused to pay any more on the contract. Taylor & Sanders called upon Aldrich to fulfill it, but he declined to do so, and finally informed them that he had conveyed the land described in the contract to another. Upon inquiry, Taylor & Sanders ascertained that on the 8th of December, 1854, Flynt had assigned his interest in the contract to one Stowers; that Stowers had called upon Aldrich, exhibited Flynt's assignment to him, and requested a deed for the lot, and that on the 27th of December, 1854, Aldrich conveyed the lot to Stowers, with covenants of warranty. After this, Taylor & Sanders again called upon Aldrich to fulfill the contract, which he refused to do, and pretended that he thought it had been paid. On the 12th of January, 1856, Taylor & Sanders having dissolved partnership and divided their business, and this contract having fallen to Sanders, Taylor assigned his interest in it to Sanders, who brought this action to recover the amount due from Aldrich. The justice before whom the cause was tried, at the circuit, held that the facts proven entitled the plaintiff to recover from the defendant the amount due upon said contract, on the ground that the defendant held the title to the property as trustee for Taylor & Sanders, and by conveying away said property, Flynt being insolvent, had prejudiced them and made himself liable for the amount due. The plaintiff accordingly recovered a verdict for $367.06; and the defendant appealed.

*Hotchkiss & Seymour,* for the appellant. The facts proven in this case did not constitute a cause of action against the defendant. Taylor & Sanders did not buy the land mentioned in the Flynt contract, of Aldrich; if that had been the transaction they would have taken a conveyance of the land subject to that contract. The agreement between Aldrich of the one part, and Taylor & Sanders of the other part, is in writing; it is not claimed that it was obtained by fraud, or that there was any mistake made in reducing it to writing; therefore what was said before or at the making of the contract is a matter of no consequence. In this view the case is one simply upon the construction of the written agreement between Aldrich and Taylor

& Sanders. The defendant claims that he sold and they purchased Flynt's promise to pay the sum of $800 in sash and blinds. Suppose that instead of assigning the contract, Aldrich had obtained Flynt's notes for $800 payable precisely as stated in the contract, and had let Taylor & Sanders have them, would the plaintiff have thought of bringing this action? Flynt was doing business, and in good credit when Taylor & Sanders purchased this promise of his; it was a bargain which they were glad to make. They paid Aldrich $800 in painting, and were to have in return for it $800 in sash and blinds—articles in which they were dealing—from time to time, as they should wish for them. The transaction was neither a sale of the land nor a guaranty of Flynt's responsibility. As between Aldrich and Flynt, Aldrich may have been holding the title somewhat as a trustee; that is, he had no right to disable himself from performing the contract. If he had conveyed the land to a bona fide purchaser, Flynt might have maintained an action against him for the damages, but no such relation existed between Aldrich and Taylor & Sanders. They in no event were to have the land, and so long as Aldrich did nothing to prevent Flynt's performing on his part they were not prejudiced. If this action can be sustained, Aldrich's assignment is turned into a guaranty. If Flynt had become bankrupt and failed in his payments, Taylor & Sanders could not have recovered them of Aldrich; neither could they have compelled a conveyance from Aldrich of the property; they could not have put into their pockets the sums which had been paid by Flynt. To illustrate the matter we will suppose that Flynt had paid the contract up, within $50 of the full amount, that is, he had paid Taylor & Sanders $750 and interest, could Taylor & Sanders have compelled Aldrich to convey to them and they thus hold the land, worth $1000, and the $750 and interest already received by them? The plaintiff's mistake consists in supposing that he is Flynt's assignee, instead of being merely the purchaser of Flynt's promise. If this judgment *can* be sustained, then the plaintiff will have received the amount of the contract, and be at liberty to collect the amount of this judgment, besides, from

Flynt. Should not the plaintiff, in the most favorable view of the case which can be taken for him, have tendered to Aldrich a re-assignment of the contract, thus putting the plaintiff in a position where he could recover the amount thereof from Flynt, or from St. John, who had assumed to pay it in Flynt's place ?

The evidence that Aldrich had conveyed the property to Flynt, or his assignee, was improperly received. Taylor & Sanders were not entitled to a conveyance of the property, and it was immaterial to them whether Aldrich had or had not conveyed it to Flynt or his assignee. If Aldrich had done an act which would have been a defense to Flynt, when sued on the contract, Taylor & Sanders would have complained of such an act, but nothing of that kind is pretended. The plaintiff should have been nonsuited, or his complaint should have been dismissed, on the trial. The facts proven did not constitute a cause of action, and did not sustain the complaint.

The complaint is based upon the idea that Taylor & Sanders not only bought the contract, but also the land; it alleges that Aldrich induced them to buy "all his right, title and interest in said contract *and things appertaining thereto*," and that he "ceased to have any interest in the same, (said contract,) *or in said real estate.*" No such thing is proven ; it is not in the assignment, and what lies out of it is not a matter of any moment. The plaintiff seeks to interpolate a new clause into this assignment, and make it read, " I do hereby sell, transfer and assign all my right, title and interest in the within contract, *and to the land described therein,* to Taylor & Sanders." The court will content itself with construing the contract made, and will not attempt to make a new one for the parties. The allegations in the complaint, as to what Aldrich said to induce Taylor & Sanders to buy this contract, must be laid out of view. No case can well be imagined where a party can with more propriety invoke for his protection the rule of law that he will be governed by what is written, and by nothing else. This case shows that a departure from it would substitute the wishes and imagination of the avaricious, for their memories ; would open the doors to perjury, and throw all rights and property

Sanders *v.* Aldrich.

into confusion, and introduce anarchy into society. If the plaintiff had any claim upon this land, in the hands of Aldrich, he has the same claim upon it in the hands of Stowers, and his rights are unimpaired, and he should find his remedy there. The complaint should be dismissed with costs to the defendant.

*D. S. Dickinson,* for the respondent. The action of assumpsit was equivalent to a bill in equity, and entitled the plaintiff to recover any moneys due to him, according to the justice and right of the matter. Aldrich, as between him and Sanders, is of right charged with the payment of the balance due on this contract, by direct action. The plaintiff's remedy against the land was involved and questionable; especially as against Stowers, who may have been, for aught that appears, a bona fide purchaser without notice. Aldrich having, with full knowledge, in disregard of his obligation and duty, conveyed the same to Stowers, while there was yet a balance due to Taylor & Sanders, will be deemed to have rescinded the contract of assignment between him and them, *pro tanto*, and be held liable to refund the money he received of them, in an action. The form may be deemed : *First,* an action, either for money had and received, for the balance of the money received of Taylor & Sanders on the sale of the contract to them, and not refunded to them by Flynt or his successors. Or, *Second,* an action, formerly termed an action on the case, upon an allegation of all the circumstances complained of, for having wrongfully deprived the plaintiff of his security, and for leaving him no other remedy but a questionable, expensive and far fetched suit in equity, or a personal obligation against an absconding, insolvent debtor. Or, *Third,* an action for the balance of the money belonging to Taylor & Sanders, and still due them on the contract, which Aldrich will be adjudged to have received of Flynt, or of Stowers, (as was doubtless the real fact,) to the use of Taylor & Sanders, on conveying the property to Stowers.

*By the Court,* JOHNSON, J. The defendant, since his assignment to the plaintiff and his partner, has received no money on

the contract, and this action cannot therefore be maintained, un-less the defendant, in conveying the premises to Stowers, has . defeated or injuriously affected some of the plaintiff's legal rights, which the defendant was under obligation to pre-serve and protect.   I take this to be simply an action at law to recover a sum of money as damages for the violation of some express or implied agreement.   How have the plaintiff's rights been affected by such conveyance?   The conveyance was to the assignee of Flynt, the vendee, who claimed the right to a con-veyance.   Flynt assigned his interest in the contract when about one half the whole amount of the purchase money had been paid.   Of course his assignee took the interest Flynt then had, subject to his obligations in respect to the payments there-after to be made, and could claim no conveyance, nor maintain any action for a refusal to convey, without making such payments, or offering to make them.   Until this was done, the defendant was under no legal obligation to convey to him as assignee.   Still, as between them he might do so if he chose, without receiving payment, and equity would give him a lien upon the land, so conveyed, for the unpaid purchase money. And this equitable lien would, I think, attach in favor of the plaintiff, as assignee of the defendant, to secure the balance un-paid upon the contract at the date of the conveyance.   And it would seem that the parties so regarded it, because we find a payment of $167.05, made to the plaintiff, upon the contract, several months after conveyance.   The presumption is, that this payment was made by Stowers, as it became his duty to pay it, having received the conveyance of the land, and nothing is shown to the contrary.

But the question of more immediate importance to this action is, was the defendant under any legal obligation to the plaintiff, not to convey the land until the payments upon the contract were all fully made?   The plaintiff, when he took the assignment of the payments due and to grow due upon the contract, might have required a covenant on the part of the defendant, not to convey until the payments were fully made.   But he did not. He took merely an assignment of the defendant's interest in the

Sanders *v.* Aldrich.

contract, without the title to the land, which gave him, as such assignee, the right to receive the payments, as they became due, and to enforce payment by action. There is in the assignment no covenant or guaranty of any kind. The question then arises, whether the law will imply any such obligation, as against an assignor, without covenants. There was doubtless an implied obligation that the contract was genuine, and had been duly executed and delivered by the vendee. And perhaps also, an implied undertaking, on the part of the defendant, that he would not convey the subject of the contract to a stranger. The contract being executory, and the right assigned a mere chose in action, the law might imply an obligation, or promise, on the part of the assignor, that he would do nothing to defeat the right of action thus assigned. And a conveyance of the land, to a stranger to the contract, might have defeated the plaintiff's right of action, upon the contract, to recover the payments. But here the conveyance was to the assignee of the vendee, in the contract, and it is entirely clear, I think, that the plaintiff's right of action upon the contract has not been destroyed, or in any respect affected, by the conveyance. The action can now be maintained on the contract, the same as before the conveyance. The insolvency of Flynt, the vendee, does not, that I perceive, affect the question, in a legal point of view, one way or the other. He became insolvent, and assigned all his interest, long before the conveyance was made. The defendant is in no respect accountable for Flynt's insolvency. Neither the rights nor remedies of the plaintiff against Flynt, the debtor, have been in the least affected by the conveyance. I conclude, therefore, that the defendant, in making the conveyance to Flynt's assignee, has violated no obligation or agreement with the plaintiff, which can serve as the foundation of an action at law.

It is quite clear, I think, that the plaintiff, by the assignment, acquired no interest whatever in the land, as against the defendant. It is well settled, that at law a contract for the sale of land, is a mere executory agreement, and does not attach to the land in any manner, as an incident, or a present or future charge. There was no privity, or reciprocal obligation, at any

time, between the plaintiff and Flynt, the vendee. The plaintiff, by reason of the assignment, could have maintained an action against Flynt to recover any payment due and unpaid, but Flynt could maintain none against him for any breach of the agreement on the part of the defendant to convey the land. The defendant's obligation to his vendee and the assignees of the latter remained, after the assignment to the plaintiff, the same as before. By the assignment he transferred none of his obligations, nor did the plaintiff assume any of them by accepting the assignment.

As the plaintiff took the assignment without any guaranty of Flynt's pecuniary responsibility, the presumption is that he took the contract to collect at his own risk, in that respect, and without recourse to the defendant. I see therefore no legal ground on which this action can be maintained, upon the undisputed facts. So much for the case in its legal aspects.

It was claimed upon the argument, by the distinguished counsel for the plaintiff, that this was an action of equitable cognizance, if by the rules of equity the plaintiff would be entitled to recover upon the facts proved. I do not admit that the action can be both legal and equitable, in its character, or either, as the evidence upon the trial may turn out to be. The evidence cannot change the character of the action which the plaintiff has seen fit to commence. That is determined by the summons and complaint, and requires its own peculiar mode of trial. Neither the rules of law nor of equity admit of metamorphoses ; and a double aspect of law and equity, in a single cause of action, finds no countenance even in the code.

But conceding this to be an equitable action, how does the case stand ? The complaint alleges that the defendant, after he made the assignment to the plaintiff and his partner, ceased to have any interest in the contract, or in the land, except to hold the title to the land as trustee for the plaintiff and his partner. But this was not the defendant's true position. He continued to hold it as trustee of his vendee, and his vendee's assignees. In equity, the vendee is the owner of the land, and the vendor of the purchase money. And the latter holds the legal title in

Sanders *v.* Aldrich.

trust, until his vendee shall become entitled to it by the performance of the contract. By the assignment the defendant did not, as we have seen, absolve himself in any respect from his legal or his equitable obligations to his vendee, or to the assignees of such vendee. His trust to them remained wholly unaffected by the assignment to the plaintiff. And if the plaintiff, as purchaser of the payments, acquired any interest as *cestui que trust*, in the subject of the trust, it was but secondary and subordinate to that of the vendee and his assignees. The primary interest was in the vendee, so long as his contract remained in force, and had not been declared forfeited. It may be, that when the defendant consented to take the purchase money from the plaintiff, and assigned the payments to become due, equity would give the plaintiff a lien. upon the land, by way of security for the purchase money thus advanced. This would be so, I think, unless the sale of the payments is to be regarded as a severance of the contract from the land, as between the plaintiff and the defendant. But equity would not so regard it, unless there was something in the case to show that such was the intention of the parties. I find nothing in the evidence to indicate any such intention between the parties, when the assignment was made. I am of opinion, therefore, that a lien was created in equity, in the plaintiff's favor, upon the land in the defendant's hands, subject to the superior rights of the vendee and his assignees.

But suppose the defendant had not conveyed to Stowers, the assignee of Flynt, and Stowers had refused to make the payments, upon the contract, or had become insolvent, and unable to make them, and thus lost his right to a conveyance, what would have been the plaintiff's remedy, in equity, against the defendant? It is clear, I think, that he could not have compelled the defendant to convey to him the land, as there was no privity of contract between them to that effect, on which a decree for specific performance could be founded. And besides, in that case he could show no equity for a claim to the whole estate, as nearly one half of the purchase money advanced by the plaintiff, to the defendants, had been refunded in the shape of payments upon the contract by Flynt, before his as-

signment to Stowers. He could not recover his money back, because there was no intention that the defendant should pay back to the plaintiff the purchase money when he received it. The most that equity could do, I think, in such a case, would be to declare the lien effectual, for the balance remaining unpaid to the plaintiff, and enforce it against the land in the defendant's hands. But here there was no forfeiture of the contract. The land has been conveyed in pursuance of it, to the assignee of the vendee. The law presumes that he had notice of the amount to be paid, when he took the assignment from Flynt, and also that he knew what amount remained unpaid when he received the conveyance from the defendant. He therefore took the title subject to the plaintiff's equitable lien for the purchase money, which the plaintiff had advanced to the defendant. This lien, for aught I can see, the plaintiff can enforce against Stowers. Indeed, as we have already seen, Stowers has paid a portion of the amount since he received his conveyance. There is no allegation or proof that Stowers is not entirely solvent, nor that the lien is not perfect upon the land, as against him, unaffected by any prior or hostile charge or incumbrance. Under such circumstances, I can see no equity whatever in allowing the plaintiff to recover of the defendant the balance remaining unpaid upon the contract. Where would be the defendant's remedy in such a case? He could have none. The plaintiff should, at least, before bringing his action, have tendered a reassignment of the contract to the defendant, so that the latter might have some redress under that, in case he was compelled to refund. But I am of opinion, as the case stands, upon the pleadings and evidence, that the plaintiff had no equity whatever against the defendant, to recover the money due on the contract, and could have none, without some further allegations and proof. Before equity can aid him in this respect, he must allege and prove, that he is unable to obtain satisfaction from the land in the hands of Stowers, by reason of some superior lien or claim against it, after it came to him; or that the defendant fraudulently conveyed to Stowers, with intent to defeat and destroy the plaintiff's remedy, and did thus

render his lien of no avail. Until some such fact is alleged and proved, the plaintiff's remedy is against Flynt or his assignee, or the land in the hands of the latter. The land is still in possession of Stowers, for aught that appears, and the plaintiff has mistaken his remedy. The judgment of the special term must therefore be reversed.

[TIOGA GENERAL TERM, May 12, 1857. *Gray*, *Mason* and *Johnson*, Justices.]